## APPENDIX A - PLEA AGREEMENT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 05-316-DSF |
| ) | No. CR 10-___-DSF (*Information*) |
| Plaintiff, ) | |
| ) | FACTUAL BASIS FOR GUILTY PLEA |
| v. ) | OF JOHN S. LIPTON |
| ) | |
| JOHN S. LIPTON, ) | |
| MARLYN D. HINDERS, ) | |
| DAVID L. JOHNSON, ) | |
| RICHARD B. LEONARD, ) | |
| WILLIAM H. NURICK, ) | |
| VICTOR H. PRESTON, ) | |
| DENISE TAYLOR-FRASER, ) | |
| WILLIAM TAYLOR-FRASER, ) | |
| TERESA R. VOGT, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### INTRODUCTION

At all times relevant to the above-referenced Indictment and Information:

A. THE INDIVIDUALS AND ENTITIES INVOLVED

1. The Internal Revenue Service ("IRS") was a constituent agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States, and collecting the taxes owed to the Treasury of the United States by its citizens.

2. Although defendant JOHN S. LIPTON ("LIPTON") does not admit to each fact alleged, defendant LIPTON admits that the government could prove beyond a reasonable doubt each of the allegations alleged in (a) Paragraphs 1 and 6 through 19 (Introduction), (b) Count 68 of the Indictment and (c) the Information.

3. Beginning in July 1994, the Genesis Fund was an unregulated offshore private investment fund that engaged in

Def Initials _JL_

foreign currency ("forex") trading through an Asian foreign currency dealer. The Genesis Fund began as an informal investment group in July 1994 that called itself "The Human Element." In October 1995, the name was changed to the Genesis Fund ("the Genesis Fund").

4. Defendant LIPTON was one of the founding members and a principal manager of the Genesis Fund. Defendant LIPTON resided in Mission Viejo and Laguna Hills, California, until in or about March 1998 when he relocated to Costa Rica.

B. <u>NATURE OF THE CONSPIRACY TO DEFRAUD THE IRS AND TO EVADE THE ASSESSMENT AND PAYMENT OF INDIVIDUAL INCOME TAXES TO THE IRS</u>

5. From July 1994 to May 2005, within the Central District of California and elsewhere, defendants, including defendant LIPTON and others, knowingly combined, conspired, confederated, and agreed to defraud the United States by deceitful and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the IRS in the ascertainment, computation, assessment, and collection of the revenue: namely, personal income taxes owed on income obtained by defendants and certain investors of the Genesis Fund.

6. The defendants used, and assisted certain Genesis Fund investors to use, foreign trusts, corporations and bank accounts in order to receive distributions from the Genesis Fund and other monies, which did not report these distributions or income to the Internal Revenue Service.

7. From 1989 through 2005, defendant LIPTON did not file tax returns.

8.  During the calendar years 1995 through 2002, defendant LIPTON received substantial income from the Genesis Fund through the following domestic trusts and foreign corporations, and defendant LIPTON did not report such income to the Internal Revenue Service:

| | |
|---|---|
| JSL Account Trust | Domestic Trust |
| BRL Account Trust | Domestic Trust |
| Genuine Management Trust | Domestic Trust |
| Internet Control Trust | Domestic Trust |
| Sorrell Property Trust | Domestic Trust |
| Pal Marketing Trust | Domestic Trust |
| T.H.E. Account Trust | Domestic Trust |
| Distribuidora Antioquia de Occidente S.A. | Costa Rican Corp. |
| Latham Enterprises | Costa Rican Corp. |
| Larix International | Costa Rican Corp. |
| Venture Sports Corporation | Costa Rican Corp. |
| Village Hall Investments | Costa Rican Corp. |

C.  **OBSTRUCTION OF IRS INVESTIGATION**

9.  On March 22, 2000, defendant TERESA R. VOGT was served with a federal grand jury subpoena in her capacity as a custodian of records for the Genesis Fund, aka Centrix Managment, aka International Centrix Management. The grand jury subpoena required VOGT to produce all Genesis Fund documents, including but not limited to, the Genesis Fund's books and records, all investor correspondence files including investor names, addresses, capital invested and withdrawn, as well as dividend disbursement. Defendants LIPTON and VOGT and co-conspirator MICHAEL PUTNAM (charged elsewhere) knew that these documents were responsive to the grand jury subpoena and that VOGT was required

3                           Def Initials

by law to produce the responsive documents to the grand jury. However, in April 2000, under the direction of defendant LIPTON, in obstruction of said subpoena, defendant VOGT with the assistance of co-conspirator MICHAEL PUTNAM, caused the transfer of approximately nineteen (19) boxes of Genesis Fund docuements from defendant VOGT's residence in Anaheim, California, to the Costa Rican law firm of Andre Tinoco & Asociados.

D. <u>OVERT/AFFIRMATIVE ACTS OF EVASION</u>

10. During the calendar years 1995 through 2002, defendant LIPTON did not report his foreign bank account holdings, or his domestic and foreign source income, to the Internal Revenue Service.

11. In furtherance of the conspiracy and to accomplish its objects, and in an attempt to willfully evade the assessment and payment of individual income taxes to the Internal Revenue Service, defendant LIPTON committed the following overt and affirmative acts, among others, in the Central District of California and elsewhere, to wit:

    a. From March 1995 through August 1999, defendant LIPTON caused the Genesis Fund to pay monies on an American Express account on which defendant LIPTON and his spouse made charges.

    b. In 1995, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of JSL Account Trust at Wells Fargo Bank in Laguna Beach, California. From 1995 through 1997 the Genesis Fund disbursed significant monies to the JSL Account Trust account.

//

Def Initials

c. In 1995, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of BRL Account Trust at Wells Fargo Bank in Laguna Beach, California. From 1995 through 1997 the Genesis Fund disbursed significant to the BRL Account Trust account.

d. In 1995, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of T.H.E. Account Trust at Wells Fargo Bank in Laguna Beach, California. From 1996 through 1997 the Genesis Fund disbursed significant monies to the T.H.E. Account Trust bank account.

e. In 1995, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of PAL Marketing Trust at Fidelity Federal Bank in Glendale, California. From 1995 through 1998 the Genesis Fund disbursed significant monies to the PAL Marketing Trust bank account.

f. In 1996, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of Sorrell Property Trust at Southern California Bank in Santa Ana, California. From 1996 through 1997 the Genesis Fund disbursed significant monies to the Sorrell Property Trust bank account.

g. In 1996, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the name of Internet Control Trust at Glendale Federal Bank in California. From 1996 through 1998 the Genesis Fund disbursed significant monies to the Internet Control Trust bank account.

h. In 1996, defendant LIPTON directed co-conspirator LASHLEE to open a domestic trust bank account in the

5                                    Def Initials

name of Genuine Management Trust at Glendale Federal Bank in California. From 1996 through 1998 the Genesis Fund disbursed significant monies to the Genuine Management Trust bank account.

    i. From 1999 through 2000 defendant LIPTON caused significant sums of monies to be sent via wire transfer from bank accounts under the control of the Costa Rica law firm, Andre Tinoco & Asociados, to an account at Banco Interfin in Costa Rica in the name of Distribuidora Antioquia de Occidente.

    j. From 2001 through 2002 defendant LIPTON caused significant sums of monies to be sent via wire transfer from bank accounts under the control of the Costa Rica law firm, Andre Tinoco & Asociados, to various Costa Rica banks account under the control of Costa Rica lawyer, Arnoldo Andre, in the name of the following six (6) Costa Rica companies: Latham Enterprises, Larix International, Olas de Tambor, The Kind Courier, Venture Sports Corporation, and Village Hall Investments. Furthermore, defendant LIPTON received income from these Costa Rica companies.

    k. From 1995 through 1999, defendant LIPTON caused the significant sums of monies in personal expenses to be paid directly from bank accounts holding Genesis Funds.

    l. From 2001 through 2002, defendant LIPTON caused a significant sum of monies to be sent via wire transfer from bank accounts under the control of the Costa Rica law firm, Andre Tinoco & Asociados, to defendant LIPTON's account at Provident Bank and Trust, Ltd. in Belize.

    m. The parties agree that the above facts do not constitute all facts relevant to this cause.

//

Def Initials

```
                    ***********************
```

I have read this Appendix A to the Plea Agreement and carefully discussed every part of this Appendix to the Plea Agreement with my attorney.  I agree and stipulate to the facts stated above.

_____          MARCH 31, 2010
JOHN S. LIPTON                            Date
Defendant

I am JOHN S. LIPTON's attorney.  I have read Appendix A to the Plea Agreement and carefully discussed every part of this Appendix to the Plea agreement with my client.  To my knowledge, my client's decision to agree to the facts as stated above is an informed and voluntary one.

_____          3/10/2010
MARK WINDSOR                              Date
Counsel for Defendant
JOHN S. LIPTON