MARK WINDSOR (No. 190589)
16 N. Marengo Street, Suite 300
Pasadena, California 91101
Telephone (626) 792-6700
Facsimile (213) 232-3609
windsorlaw@gmail.com
Attorney for Defendant, John S. Lipton

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) **CASE NO.   CR-05-316-DSF** |
| Plaintiff, | ) **DEFENDANT LIPTON'S SENTENCING** |
| | ) **MEMORANDUM** |
| **v.** | ) |
| | ) |
| **JOHN S. LIPTON** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM**

Mr. Lipton respectfully submits that the appropriate sentence in this matter is a sentence of time served, with restitution in the amount of tax and interest owed on an unreported income of $1,500,000.00.

**I.     OBJECTIONS TO THE PRESENTENCE REPORT.**

Mr. Lipton agrees with the Guidelines calculations set forth in the PSR, with the exception of the calculation of aggravated role in the offense. The probation officer assesses a four-level enhancement under role for the sole reason that Mr. Lipton allegedly was an

"organizer or leader" of criminal activity involving more than five participants or was otherwise extensive, thereby warranting the four-level enhancement under U.S.S.G. 3B1.1(a). It is true that Mr. Lipton was a founder and organizer of the Genesis Fund. This role does not directly translate, however, to his role in the specific offenses to which he pled guilty. As to obstruction of an IRS investigation in connection with Count 68 of the indictment, Mr. Lipton specifically directed the activity of one other, Teresa Vogt, who was assisted by another individual by the name of Michael Putnam in secreting out of the country documents that were the subject of a grand jury subpoena . In so doing Mr. Lipton conspired with others to evade the payment of taxes. With regard to the information charging one count of tax evasion, Mr. Lipton directed the activities of Teresa Vogt, Mr. Lashlee, and an unnamed Costa Rican lawyer in the creation of accounts the purpose of which was to hide assets from the IRS. In neither of the scenarios did Mr. Lipton direct or control five or more participants in the crime. While the conspiracy at issue could be considered "otherwise extensive," given the amount of loss alleged by the government, it has not been established that Mr. Lipton was an organizer, leader, manager or supervisor with regard to the more extensive conspiracy to evade taxes outlined in the indictment in this case. While Mr. Lipton is deserving of an increase in his guidelines calculation under a role analysis, that increase is appropriately set at two levels, not four.

There are several factual statements made in the report that Mr. Lipton does not agree with, but which do not affect sentencing.

With regard to the disclosed recommendation letter, Mr. Lipton disagrees with the recommended restitution amount of $2,915,427.16, since the government has not established that this was the amount of loss by any standard of proof. In addition, this amount, by the government's own admissions at a prior hearing, does not take into account any deductions or

transfers between funds. Mr. Lipton agrees that he should be held jointly and severally liable in the event restitution is set higher than the loss actually caused by Mr. Lipton based upon his unreported income for the relevant time period. With regard to the amount of monthly payments on restitution, Mr. Lipton agrees with everything stated by the probation officer except the actual amount. Based on the current financial circumstances of Mr. Lipton, with a monthly income of around $1450, it can hardly be correctly stated that $1,000 monthly payments would be in any way "nominal." The issue of restitution is discussed further below.

Mr. Lipton also objects to a sentence of 72 months, which could require him to surrender again to the U.S. Marshals until his credits are calculated. The appropriate sentence in this case is time served.

## II.   RESTITUTION

The government has the burden of proof with regard to restitution amounts. It has provided little in the way of justification for their estimates regarding loss of income tax revenue from the conspiracy in this case, and what they have provided is inaccurate and confusing. Revenue Agent Pugh has determined that Mr. Lipton's Genesis Fund Distributions for the applicable period is $1,724,703.27. This appears to be based upon a "Lipton Income Summary" that has been filed as page 1 of Document 903-5 in this case, which was used as an exhibit in the evidentiary hearing on restitution for defendant Leonard.

Even a cursory review of this document reveals that the figure above includes $204,239.00 of wages from 1995 from Times Mirror – wages that were already taxed. No rational explanation for why these taxed wages are included has been provided to either the court or Mr. Lipton. Therefore, at the outset, the taxable income of Mr. Lipton for the relevant period should be reduced to $1,520,464.27. In addition, it appears from the above exhibit that Mr.

Lipton's income was calculated to include deposits to an account called "The Antique Gallery," which totaled $74,770.14. That account did not belong to Mr. Lipton, nor was it ever associated with him. The government appears not to contest this, as the listing of the account is conspicuously absent from its latest filings (though the amount attributable to the account remains), and the account is not referred to in the PSR. Therefore, the income to be used should again be reduced to $1,445,694.13, based purely on the face of the government's own filings.

It also appears that Agent Pugh calculated this income based solely on deposits into the listed accounts, making no allowance for deductible items or transfers between accounts. Mr. Lipton estimates inter-account transfers and expenses in these accounts to total hundreds of thousands of dollars. Rather than burden the court and parties with extensive evidentiary proceedings and delay in this regard, however, Mr. Lipton requests that the Court instead apportion restitution with regard to Mr. Lipton, and order restitution be paid in the amount of tax and interest owed on undeclared income of $1,445,694.13.

Mr. Lipton has agreed in the plea agreement to file returns for all missed years in the conspiracy within 365 days of sentencing. Upon filing such returns, the government may require him to begin paying taxes owed on those returns. Mr. Lipton therefore requests that any restitution order specifically state that the amount of restitution is to be reduced by any amount of the taxes paid by Mr. Lipton as a result of these returns. In the event that Mr. Lipton is ordered jointly and severally liable for restitution based on co-defendants unpaid taxes, he requests that the order reduce his amount of liability by any amount of tax similarly paid by codefendants.

Mr. Lipton also requests that his monthly restitution payments be held at $25 per month, or suspended altogether during his first year of supervised release. Mr. Lipton will have to file tax returns for years where no bank records, or very few bank records may be available, if the

government is correct. He will also require some professional assistance with the proper filing of these returns, lest he risk further antagonism by the IRS. Whatever professional assistance he receives in this regard will require payment on Mr. Lipton's part. Mr. Lipton will also need to find a job to support himself and his wife, who has suffered both physically and mentally since Mr. Lipton's incarceration. At the present time, Mr. Lipton must borrow funds from his daughter to pay expenses. Additionally, if the Court follows the recommendation of the Probation Office, Mr. Lipton will have to perform 360 hours of community service. For these reasons, and in light of his low income at present, Mr. Lipton requests restitution payments be set at $25 per week or suspended for the first year, subject to review by the probation office in the event Mr. Lipton's financial circumstances change.

**III.    18 U.S.C. 3553(a)**

Mr. Lipton agrees with the government that the appropriate sentence for Mr. Lipton is time served, and that such sentence is sufficient, but not greater than necessary.  Mr. Lipton specifically adopts the government position in sections III A1&2 and B 1&2 of the government's Position re Sentencing of Mr. Lipton, DOC 1002.[1] Mr. Lipton did not file tax returns for many years, during a time he received significant taxable income. In these five years of incarceration Mr. Lipton has been an exemplary inmate, both here at the MDC Los Angeles and in the prisons in Costa Rica. At the same time, he has learned a great deal and his worldview has evolved in a positive way. Mr. Lipton is extremely happy to be together again with his wife of 41 years and looks forward to fulfilling the conditions of supervised release, paying restitution, and someday putting this case behind him. The sooner Mr. Lipton is able to begin this project, the better for all involved.

---

[1] Mr. Lipton reserves the right to respond to other sections of

## VI.    CONCLUSION

For the foregoing reasons, Mr. Lipton requests that the Court sentence him to time served, and order restitution in the apportioned amount of tax and interest owed on an unreported income of $1,445,694.13 to be paid at a current rate of $25 per month, or suspended for the first year of supervised release.


Respectfully submitted,

DATED:  JULY 12, 2010


_____/s/_____
MARK WINDSOR
Attorney for John S. Lipton

the government's Position at a later time.